## Baltimore Trust Co., Substituted Trustee, v. Huhn et al.

*Trusts and trustees—Embezzlement of stock certificates—Tracing property—Brokers.*

1. Where a *cestui que trust* can trace the specific property embezzled by his trustee into the hands of third parties, he is entitled to recover.

2. If the trustee transfers the stock to his own name or the name of his brokerage firm, the stock is still the property of the trust estate and may be traced.

3. In such case, the fact that the exact certificates are not identified is immaterial if a group is found in which the number of shares and the kind of stock which were embezzled are included.

4. Where a group of creditors of an insolvent brokerage firm which is threatened with bankruptcy or assignment agree that, in consideration of the assignment of a portion of the assets to a trustee appointed by them, all the other creditors shall be paid by the firm, a creditor whose securities have been included among the assets transferred to the trustee is entitled to payment of his claim in full, although he may not be able to trace his securities, as the agreement takes the place of proceedings in bankruptcy, insolvency or an assignment for the benefit of creditors and the trustee, by settling with other creditors in full, has made it impossible to distribute the assets according to the ordinary equitable rights of creditors.

5. Where a surety company on the bond of a trustee enters into an agreement with a substituted trustee for the same trust, by which the substituted trustee and the surety company adjust between themselves their rights and liabilities under the bond, and by which the substituted trustee may prosecute suits necessary to recover certain securities belonging to the trust estate and embezzled by the original trustee, the substituted trustee does not, by virtue of the agreement, part with its rights to the securities.

6. In such case, where the substituted trustee filed a bill in equity against third parties in possession of securities of the trust estate, the defendants therein cannot set up the agreement between the plaintiff and the surety company as a ground for dismissing the bill.

Bill, answer and proofs. C. P. No. 2, Phila. Co., June T., 1926, No. 2126, in Equity.

*Maurice W. Sloan*, for complainant; *Frederic L. Ballard*, for F. L. Ballard

*William M. Kitzmiller*, for Henry S. Drinker, Jr.

*Charles Henry Scott, Jr.*, for George A. Huhn.

GORDON, JR., J., June 11, 1927.—This is a bill in equity brought by the Baltimore Trust Company, trustee of the estate of Thomas Janney, to compel delivery to it of certain shares of stock claimed to be the property of the estate, and now held by the defendants, Frederic L. Ballard and Henry S Drinker, Jr., for safekeeping. The facts in the case, which are substantially undisputed, are somewhat numerous and involved, and it would serve n practical purpose to recite them in detail here. It will be sufficient to make the following findings upon those that are salient and controlling:

The brokerage firm of George A. Huhn & Sons, of which George A. Huhn was a member, became financially involved in 1924, and, on March 7, 1924 assigned all its assets to the defendant, Harry E. Kohn, as trustee. This assignment followed upon an agreement dated March 4, 1924, between certain creditors of the firm, among whom were James A. Bonsack and E. H Winner. This agreement provided, *inter alia*, as follows:

"In order to avoid bankruptcy, the undersigned agree that upon an aggregate of $1,800,000 of claims against the firm having assented thereto, they will permit the firm to pay off all other customers not exceeding in th aggregate $643,000, and assignment then to be made by the firm and the members thereof of all assets to a nominee of the undersigned as liquidating trustee, each party reserving against the fund or property such rights

preferences as he may be able to establish. This agreement to become binding only in case the necessary amount of assents, to wit, an aggregate of $1,800,000, are secured. Pending the securing of these assets, payments of small amounts (no single account to exceed $35,000) may be made in an aggregate amount, including payments made this day, March 4th, not to exceed $100,000 to customers demanding and insisting upon payment through other brokerage houses."

In carrying out this agreement, it was discovered that the firm had pledged for loans with various banks a large quantity of stocks and bonds owned by the firm or held for the account of customers, among which were 559 shares United States Steel Preferred and 8007 shares of British-American Tobacco. The shares so pledged were lifted by the trustee and distributed in accordance with the creditors' agreement, above referred to, with the exception of the following enumerated stocks and bonds, which are the subject of this suit, and are being held by Mr. Ballard and Mr. Drinker to await its outcome: 62 shares United States Steel Preferred, 500 shares British - American Tobacco, 78 shares Norfolk and Western Railroad, 250 shares Consolidated Traction Preferred, 209 shares Philadelphia Electric Company (including certain rights), $6000 P. Lorillard—7's, and 4000 Liggett and Myers—7's.

With respect to these stocks and bonds, the facts are as follows: Before the assignment by George A. Huhn & Sons to Kohn as trustee, George A. Huhn was trustee of the estate of Thomas Janney, and as such trustee had in his possession said stocks and bonds. These securities he converted to his own use by placing them, where necessary, in the name of his brokerage firm, mingling them with stock belonging to the firm and to its customers, and pledging them, together with other stocks, with banks for loans. After the failure of the firm, Huhn was removed as trustee of the Janney Estate and the plaintiff here substituted in his place. The plaintiff then made demand upon Kohn for the securities in question, and, by agreement of the parties, they were placed in the hands of Mr. Ballard and Mr. Drinker for safekeeping, as already mentioned. When Kohn, as trustee of the brokerage firm, lifted the securities pledged by the firm with the different banks, he had in his possession, including the aforesaid securities, a large quantity of miscellaneous stocks and bonds which fell into three categories, A, stocks and bonds belonging to the firm; B, stocks and bonds belonging to customers of the firm, which had been pledged with the firm for loans; and C, the securities here in suit. Kohn then proceeded to sell and distribute these stocks and bonds. He sold some on account of customers' loans and others he returned to customers who cleared their loans. The method by which this was done was not exactly as here detailed. For instance, some of the securities were sold by the banks in adjustment of the loan accounts with the brokerage firm. What is stated, however, is the legal substance and effect of all the many transactions involved, and will serve more clearly and succinctly to bring out the exact point in the case. After thus liquidating loan accounts with the banks and customers, it was found that, with the exception of the creditors who are parties to the agreement of March 4th, there had been just enough shares of stocks and bonds to satisfy the claims of all customers who had pledged stock with the firm, and to leave over the stocks and bonds involved in this litigation, which exactly represent in number and kind the stock of the Janney Estate which Huhn had embezzled.

The foregoing are the controlling facts in the case, and the question arises whether, in these circumstances, the plaintiff is entitled to the stock or must share *pro rata* with the creditors in a distribution of the assets by the

trustee. It is admitted that the plaintiff has traced and identified all of these stocks and bonds sufficiently to entitle it to reserve them, with the exception of the 62 shares of United States Steel Preferred and the 500 shares of British-American stock, and we will direct the defendant holders of those securities to deliver them to the plaintiff. The only dispute in the case involves the United States Steel and British-American Tobacco shares, and we are of opinion that the plaintiff is entitled to receive them also for two reasons: First, because it has sufficiently traced and identified its property in the hands of the trustee of the brokerage firm; and, second, because, under the creditors' agreement and the acts of the trustee in carrying it out, the plaintiff is equitably in the same position as a creditor not a party to the agreement, and is, therefore, entitled to the stock. Considering the first of these reasons, it is well settled law that where a *cestui que trust* can trace the specific property embezzled by his trustee into the hands of third parties, he is entitled to recover it, and this the plaintiff has done in the case before us. It is conceded that Huhn transferred this stock to the name of his firm and then placed it among the hypothecated securities recovered by the trustee. When, after the transfer, the new certificates were delivered to Huhn, they were still the property of the estate, and were held by him as trustee. By showing, therefore, that he mingled them with his firm's pledged securities, which were afterwards recovered by the trustee, the property of the estate is directly traced into the latter's hands. It is true that the exact certificates are not identified, but the group in which they are is. The members of that group are all alike, and, like a quantity of identical articles which are of equal value, it is a matter of indifference which is taken: Conneautville Bank's Assigned Estate, 280 Pa. 545.

This, it seems to us, would be a sufficient identification of the plaintiff's stock to justify the awarding of the shares to it in equity, but, under the facts of this case, there is an additional and controlling reason for awarding the shares to the plaintiff, apart from that just discussed. By the creditors' agreement already referred to, the twelve signatory creditors, some or all of whom are also asserting an interest in these shares because stock in the same companies belonging to them had been similarly pledged by the firm, interfered with the regular and ordinary course of the distribution of the assets of a bankrupt through bankruptcy or assignment worked out under the supervision of a court, and undertook the task of liquidating the affairs of the firm through their chosen trustee. The agreement was entered into for the mutual benefits the signatories thereto expected to derive from working out the situation in that manner, and, by the clause quoted above, they gave to other creditors who were not parties to it a preference which, if not accorded to the plaintiff, would work an obvious injury to it. In effect, the clause in question provided that all other creditors should first be satisfied in full by the trustee, and that the remaining assets should then be worked out by the trustee for the benefit of the signatories. If the plaintiff has not successfully traced its stock so as to demand its return, it is in the position of a general creditor. Therefore, by settling with the other creditors or satisfying them in full, the trustee has made it impossible to distribute the assets according to the ordinary equitable rights of creditors. The plaintiff cannot be compelled to share with the signatories what is left. It must be treated without discrimination, in the same manner as the other creditors who are not parties to the agreement, and must be satisfied in full so long as the assets last, and if there be sufficient shares of stock of the proper kind left to do so, it is entitled to them.

One other question remains to be noted. The Maryland Casualty Company was surety on the bond of George A. Huhn, former trustee of the Janney Estate, and as such surety it became responsible to the present plaintiff, the substituted trustee, for any loss which might arise as a result of the embezzlements of Huhn in connection with the securities here in controversy. On April 14, 1926, after these proceedings had been begun, the Maryland Casualty Company entered into an agreement with the plaintiff, the purpose and effect of which was to adjust between them their rights and liabilities under the bond, and to take care of possible losses by the plaintiff in connection with the securities. In that agreement it was agreed that the plaintiff should prosecute such suits as might be necessary in its own name, and if any recovery of securities was had, the agreement provided for an adjustment between the parties to it. It is contended by the defendants that, as a result of this agreement, the plaintiff has parted with all rights it may have to the securities, and, therefore, no longer has standing to prosecute the bill. With this position we cannot agree. The agreement referred to specifically reserved the right of the plaintiff to prosecute this and similar suits for the recovery of the embezzled securities, and was in effect a mere adjustment of rights between the parties, as to which the defendants here have no interest. We see no reason for dismissing the bill upon this ground. We, therefore, conclude that the plaintiff is entitled to the shares of stock held by Messrs. Ballard and Drinker, and accordingly enter the following

### Decree.

And now, to wit, June 11, 1927, this cause having come on to be heard at this term of court upon bill, answer and proofs, upon consideration thereof, it is ordered, adjudged and decreed:

1. That the defendants, Frederic L. Ballard and Henry S. Drinker, Jr., transfer and deliver over to the plaintiff the following securities now held by them to await the outcome of this suit: 62 shares United States Steel Preferred, 500 shares British-American Tobacco, 78 shares Norfolk and Western Railroad, 250 shares Consolidated Traction Preferred, 209 shares Philadelphia Electric Company (including certain rights), $6000 P. Lorillard—7's, and 4000 Liggett and Myers—7's.

2. That the plaintiff pay the costs of these proceedings.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.